# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICKY HORTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-16-3086 |
| NANCY KOPP, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Ricky Horton is an inmate incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  Am. Compl. ¶ 3, ECF No. 4.  Plaintiff alleges he was improperly removed from Special Needs Unit ("SNU") housing; he is receiving inadequate medical treatment; and he was assaulted by a correctional officer.  *Id.*  Plaintiff initiated this litigation pursuant to 42 U.S.C. § 1983, and also brings state law claims for assault, battery, negligence, and medical malpractice.  Pending is a Motion to Dismiss or, in the alternative, for Summary Judgment filed by Warden Frank B. Bishop, Jr.,[1] Mental Health Professional Counselor–Advanced Bruce Liller, Psychology Associate I Lauren Beitzel, Acting Lieutenant Janet Puffenbarger,[2] Correctional Officer Timothy Marchinke, and Correctional Officer Cody Gilpin.[3]  Def.'s Mot., ECF No. 27.  Plaintiff has responded (ECF Nos. 29 & 37) and Defendants

---

[1] In his response to the dispositive motion, Plaintiff states he wishes to dismiss his complaint against Warden Bishop.  Pl.'s Opp'n 3, ECF No. 29.  Plaintiff's voluntary dismissal of Warden Bishop will be granted.

[2] Acting Lieutenant Puffenbarger is referred to in Defendants' Memorandum as a Sergeant.  *See, e.g.*, Defs.' Mem. 4, 29.  However, in her sworn declaration Defendant Puffenbarger states that she is an Acting Lieutenant at NBCI.  Puffenbarger Decl. ¶ 2.  Accordingly I will refer to her throughout this opinion as Acting Lieutenant Puffenbarger.

[3] Plaintiff also brings claims against Norma Halwager and Laura Wilson, who have not been served with the Complaint as they resigned from state service.  Acceptance and Rejection of Service 2, ECF No. 20.  The Complaint against them shall nevertheless be dismissed for the same reasons as the other state defendants.

have filed a Reply and a Supplemental Reply. ECF Nos. 30 & 31. Plaintiff also has filed a Court-permitted Surrebuttal. Surrebuttal, ECF No. 36. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2016). Defendants' motion, construed as a motion for summary judgment, will be granted.[4] Plaintiff's claims for his removal from the Special Needs Unit will be dismissed with prejudice. Plaintiff's claims for the alleged assault and his inadequate medical treatment will be dismissed without prejudice for failure to exhaust his administrative remedies. I decline to exercise supplemental jurisdiction and therefore, his state law claims also will be dismissed without prejudice.

## Background

### *Alleged Improper Removal from the Special Needs Unit*

Plaintiff alleges that he is disabled due to his psychological condition and that he meets a number of statutory classifications including the Rehabilitation Act, 29 USC §§ 794 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §§ 12101. Am. Compl. ¶¶ 16–18. He alleges that

---

Jenette Simmons and Vincent Siracusano also have not been served with the Complaint. *Id.* Simmons and Siracusano are not state employees but rather are employed by MHM-Maryland, Inc., the contractor who provides mental health services for state inmates. ECF No. 14-1. However, because I decline to exercise supplemental jurisdiction, Plaintiff's state law claims against Simmons and Siracusano for negligence and medical malpractice, respectively, also will be dismissed. 28 U.S.C § 1367(c)(3).

[4] Because the Defendants filed a motion to dismiss or in the alternative for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. "[T]he Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue,* No. DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.,* No. CCB–12–3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998). Here, the title of the motion itself, "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," makes it obvious that the Court might construe it as seeking summary judgment, and thereby provides sufficient notice to Plaintiff. *See Ridgell,* 2012 WL 707008, at *7; *see Laughlin,* 149 F.2d at 260–61.

on August 13, 2014, he was placed in the Special Needs Unit ("SNU") due to his "severe mental health illness." *Id.* ¶ 22. He alleges that he was removed from the SNU based on Ms. Wilson's disregard for policies and procedures. *Id.* ¶ 19. Further he alleges that Ms. Wilson and Mr. Liller violated his rights when his removal was done "without conducting the adqaut [sic] and proper Mental Health evaluation and knowing that [Plaintiff] suffer[s] from mental retardation that warrants [his] placement on the special needs unit." *Id.* ¶ 23. According to Defendants, they moved Plaintiff to the SNU on a trial basis and determined he was not suited for participation in the program. Liller Decl. ¶¶ 4–6, ECF No. 27-3.

*Mental Health Evaluation and Care*

Plaintiff generally alleges that his removal from the SNU and his diagnosis and treatment have been inadequate. He alleges that since his removal and placement in the general population he has received but not taken his medication regularly, has had his medication taken by other inmates, and has been hallucinating. Am. Compl. ¶ 24; *see also* Med. R. 2, ECF No. 27-5 ("Horton has regularly claimed noncompliance with medications, stating that when he is in an erratic, bad mood he finds it difficult to take his medications when given to him."); Admin. R. 41, ECF No. 27-6 ("He continues to state that his medications do not work due to his own laziness/inability to up and take them."). Plaintiff also alleges that he has had suicidal thoughts and hid medication in his cell in an attempt to take his own life. Am. Compl. ¶¶ 37–39. Plaintiff's cellmate, Eric Mills, brought Plaintiff's expression of suicidal thoughts to the attention of NBCI. *Id.* at ¶ 40; Admin. R. 24–26, ECF No. 27-6. At that time, NBCI medical personnel discussed what Mr. Mills reported with Plaintiff. *See id.* ¶¶ 41–42. Plaintiff alleges that he was returned to his cell without "any precaution alerts." *Id.* ¶ 42.

none*Alleged Assault on June 25, 2016*

Plaintiff alleges that on June 25, 2016 he was being escorted in a chair with his hands handcuffed behind his back to see Dr. Vincent Siracusano by Correctional Officer Marchinke, when Correctional Officer Gilpin confronted him. Am. Compl. ¶¶ 55, 59. He alleges that prior to that day he had "many words with [Gilpin] before." *Id.* ¶ 55. Plaintiff alleges that while in the hallway Correctional Officer Gilpin "became angry and unprofessional, and walk [sic] up and snatched Mr. Horton out of the chair and started calling Mr. Horton dumb Black niggas." *Id.* ¶ 56. Plaintiff alleges that Correctional Officer Gilpin then placed him in a headlock and "started slinging Mr. Horton down the hallway by his neck." *Id.* He further alleges that Acting Lieutenant Puffenbarger ordered Correctional Officers Gilpin and Marchinke to put him in a strip cell and that Correctional Officer Gilpin grabbed his arm and tried to break Plaintiff's hand and wrist. *Id* at ¶ 57. Lastly, Plaintiff alleges that as he was yelling in pain, Correctional Officers Gilpin and Marchinke refused to provide him with medical attention. *Id.* ¶ 58. Correctional Officers Gilpin and Marchinke deny under oath any wrongdoing. Marchinke Decl., ECF No. 27-9; Gilpin Decl., ECF No. 27-10.

*Administrative Exhaustion*

Plaintiff alleges that he has administratively exhausted his claims

> [a]ll the way to Inmate Grievance Officer, but ha[]s not receive a response back yet, but due to the fact that Mr. Ricky Horton['s] life, health, and safety is in imm[e]nent danger . . . prisoner a[d]vocates felt it in the best interest of [Plaintiff] to help him file this law-suit [sic] before his psychosis disorder gets him kill by staffs or inmates.

Am. Compl. ¶ 63. However, in his Opposition, Plaintiff admits he had not administratively exhausted all of his claims when he initiated this suit, stating that he "wrote the courts in fear for his life, while continuing to exhaust his administrative remedies with the state of Maryland." Pl.'s Opp'n 2.

Mental Health Claims[5]

Plaintiff filed a request for an administrative remedy procedure ("ARP") (NBCI ARP 2658-15) on December 22, 2015, asking that he be put on a mental health plan to ensure his safety and that of others, and to ensure he was taking his medications. Admin. R. 24–25. This request arose after Plaintiff confessed to Mr. Mills that he had hidden medicine in their cell because he was depressed and contemplating suicide. *Id*. Plaintiff's request alleged that he received inadequate medical care, that he should have been placed on a "caution alert" (due to his suicidal thoughts), and that the prison was indifferent to the fact that he could "become psychotic and dangerous." *Id.* at 25.

On February 13, 2016, the Warden dismissed Plaintiff's request, having found the allegations did not have merit. *Id.* at 24. Plaintiff appealed the Warden's decision. *Id.* at 20. The Commissioner dismissed Plaintiff's appeal having found that "no policy, procedure, rule, regulation, or law has been violated" and that the prison staff "acted within the scope of their training and license." *Id.* at 19. Plaintiff then appealed to the Inmate Grievance Office ("IGO") on June 29, 2016. Neverdon Aff. ¶ 3(b), ECF No. 27-7. On January 25, 2017, the IGO responded to Plaintiff that it required additional information from him as required by regulation; however, IGO Executive Director Russell A. Neverdon has attested that Plaintiff has not

---

[5] In his filings, Plaintiff repeatedly characterizes himself as suffering from various mental health conditions and cognitive deficiencies. *See, e.g.*, ECF No. 37. Mindful of Fed. R. Civ. P. 17(c)(2), I reviewed his filings with an eye towards determining whether it was necessary to appoint a guardian *ad litem* or other individual to represent his interests. Having done so, it is clear that the Plaintiff has displayed no inability to clearly articulate his grievances (before this Court and in his requests for administrative review from correctional officials), and has been notably articulate in responding to the evidence and arguments raised by the Defendants. For this reason, I have concluded that he is more than able to present his claims and arguments effectively, and it is unnecessary to appoint a guardian or other individual to represent his interests.

responded. *Id.* Neverdon also has sworn that "no final administrative decision has yet been rendered on this grievance." *Id.* ¶ 3(b).

## Assault Claims

Plaintiff filed a request for an ARP (NBCI ARP 1546-16) on July 8, 2016, alleging that Officer Gilpin attacked him as he was being escorted to his cell and used a racial epithet towards him. *Id.* at 52. The Warden dismissed Plaintiff's request on August 12, 2016, finding that there was no evidence that Plaintiff was attacked by the staff. *Id.* Plaintiff appealed the Warden's decision to the Commissioner of Corrections on August 31, 2016. *Id.* at 48. On October 3, 2016—after Plaintiff filed this lawsuit—the Commissioner also dismissed his appeal having determined that the "Warden fully addressed your initial complaint. [Plaintiff] failed to substantiate [his] claim that Officer Gilpin acted in a less than professional manner and assaulted [him]." *Id.* at 49. On November 29, 2016, Plaintiff appealed the Commissioner's ruling to the IGO. Neverdon Aff. ¶ 3(c). A hearing was then scheduled to take place on May 11, 2017.[6] *Id.*

### *Procedural History*

Plaintiff filed this litigation on September 6, 2016. Compl., ECF No. 1. Plaintiff seeks redress for alleged Eighth Amendment violations pursuant to 42 U.S.C. § 1983 against (1) Correctional Officers Gilpin and Marchinke for excessive use of force; (2) Acting Lieutenant Janet Puffenbarger for failing to protect Plaintiff as he was allegedly assaulted; (3) Bruce Liller and Laura Wilson for inadequate medical treatment and removal from the SNU; and (4) Warden Bishop for failing to take action. Am. Compl. ¶¶ 66–67, 69–70. Plaintiff also brings state law claims against (1) Correctional Officers Cody Gilpin and Timothy Marchinke for assault and battery; (2) Lauren Beitzel, Jenette Simmons, and Norma Halwager for negligence; and

---

[6] The parties have not indicated whether this hearing took place, or if it did, its results.

(3) Vincent Siracusano for medical malpractice.  *Id.* ¶¶ 64–65, 68.  He also names Nancy Kopp and the "Psychology Department and officers of the North Branch Correctional Institution" as Defendants, although he does not state the claims brought against these Defendants.  Defendants Warden Bishop, Mr. Liller, Ms. Beitzel, Acting Lieutenant Puffenbarger, Correctional Officer Marchinke, and Correctional Officer Gilpin moved to dismiss Plaintiff's complaint, or in the alternative for summary judgment, arguing he has failed to exhaust his administrative remedies, that he is receiving adequate psychological treatment, and that he was not subjected to excessive force.[7]  Defs.' Mem. 3.

As already noted, Defendants' motion, construed as a motion for summary judgment, will be granted.  Plaintiff's claims for his removal from the Special Needs Unit will be dismissed with prejudice and Plaintiff's claim for the alleged assault and his inadequate medical treatment will be dismissed without prejudice for failure to exhaust his administrative remedies.  I decline to exercise supplemental jurisdiction and therefore, his state law claims will be dismissed without prejudice as well.

## Standards of Review

### Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any

---

[7] Defendants also have moved to dismiss Plaintiff's complaint, or in the alternative for summary judgment, on additional grounds, should the Court conclude that Plaintiff exhausted his claims.

7

set of facts consistent with the allegations in the complaint.  *Id*. at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

*Motion for Summary Judgment*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*  A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt."  *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).  The substantive law governing the case determines what is material.  *See Hooven–Lewis v. Caldera*, 249 F.3d 259,

265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see also* Fed. R. Evid. 401 (defining relevance).

In *Anderson,* 477 U.S. at 249, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar facts "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2); *see also Ridgell,* 2012 WL 707008, at *7; *Laughlin,* 149 F.2d at 260–61.

### Analysis

#### *Defendant Nancy Kopp*

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal

involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability may attach under 42 U.S.C. § 1983 if (1) the defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799.

Defendant Nancy Kopp appears only once in Plaintiff's Amended Complaint where Plaintiff alleges that "Defendant The Honorable Nancy Kopp is the tresurer [sic] for the state of Maryland and is generally responsible for the Tresurer [sic] Department and she is sued in her individual and official capacity." Am. Compl. ¶ 4. In his Surrebutal, Plaintiff referred to Nancy Kopp as the "Head of Maryland Insurance Division" in arguing that the State has always been a party and that he exhausted his state tort claims by filing it with her. Surrebuttal 2–3. As Plaintiff has not alleged any participation in any event by Ms. Kopp or that she had knowledge of a subordinate's participation in an event and failed to respond adequately to that knowledge, she

cannot be held liable under § 1983. Therefore, Plaintiff's claim against Ms. Kopp will be dismissed. *See Vinnedge*, 550 F.2d at 928–29; *Shaw*, 13 F.3d at 799.

*Defendant "Psychology department and officers of the*
*North Branch Correctional Institution"*

To sustain an action under 42 U.S.C. § 1983, the plaintiff must demonstrate that: (1) he suffered a deprivation of rights secured by the Constitution of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no legal entity named "Psychology department and officers of the North Branch Correctional Institution." As such, "Psychology department and officers of the North Branch Correctional Institution" is not a "person" subject to suit or liability under § 1983, and Plaintiff's claims against "Psychology department and officers of the North Branch Correctional Institution" will be dismissed. *Harden v. Green*, 27 Fed. App'x 173, 178 (4th Cir. 2001) ("The medical department of a prison may not be sued, because it is not a person within the meaning of § 1983.") (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71 (1989); *Fischer v. Cahill,* 474 F.2d 991, 992 (3d Cir. 1973)).

*Administrative Exhaustion*

Defendants Mental Health Professional Counselor–Advanced Bruce Liller, Psychology Associate I Lauren Beitzel, Acting Lieutenant Janet Puffenbarger, Correctional Officer II Timothy Marchinke, and Correctional Officer II Cody Gilpin raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. Defs.' Mem. 9–12. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison

11

conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624–25 (D. Md. 2015) (internal citation omitted).

For most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* Md. Code Regs. 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *Id.* at 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. *Id.* at 12.07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. 12.07.01.03 and 12.07.01.05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it

is "wholly lacking in merit on its face," or refers it to an administrative law judge for a hearing. Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); Md. Code Regs. 12.07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination within fifteen days of receipt of the proposed decision. *See* Corr. Servs. § 10-209(b)-(c).

Although the above-described procedure applies when seeking to exhaust most types of administrative remedies, a different administrative procedure applies when an inmate files a grievance about certain subjects. One such example is case management decisions, which require the filing of a grievance directly with the IGO. OPS.185.0002.05F(1). "[H]ousing assignments involve case management decisions that are not addressed through the ARP; rather, case management decisions are to be addressed directly to the IGO," and therefore administrative remedies need not be exhausted for complaints about housing assignments. *Gabriel v. DeVore*, No. JKB-16-471, 2017 WL 371801, at *8 (D. Md. Jan. 26, 2017); *see also Hurt v. White*, No. DKC-14-1315, 2015 WL 1522944, at *10 (D. Md. Apr. 1, 2015) ("To the extent this claim raised a case management issue regarding Plaintiff's enemies list and his housing assignment, it was not addressable through the ARP process . . . .").

Relevant to the claims presented in this case, Plaintiff has failed to complete the administrative process as to his claims for failure to provide psychiatric care and for the alleged June 25, 2016 assault. Plaintiff filed IGO No. 20161154 on June 29, 2016, arguing that he had not been provided adequate psychological care. Neverdon Aff. ¶ 3(b). That complaint remained pending when Plaintiff filed his Complaint on September 6, 2016. After filing this case, Plaintiff filed IGO No. 20161925, on November 29, 2016, complaining of the alleged assault upon him by

Correctional Officer Gilpin. *Id.* ¶ 3(c). No final administrative decision had been reached regarding that case when Plaintiff filed his Complaint and the hearing that was scheduled in the manner had not even been held. *Id.* Plaintiff admits his failure to exhaust these two ARPs but asks that he be excused or for the Court to delay deciding the manner until he has exhausted his claims. Pl.'s Opp'n 2.

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al.*, No. JKB-15-1349, 2015 WL 6727547, at *3–4 (D. Md. Nov. 11, 2015). Therefore, Plaintiff's claims against Gilpin, Marchinke, Puffenbarger, Liller, and Wilson, alleging the denial of adequate psychiatric care and use of excessive force (in the form of his assault allegations) are dismissed without prejudice. It is unclear to the Court whether he still may be able to exhaust his claims and, then file another suit; therefore, dismissal without prejudice is proper.

*Removal from SNU Housing*

Plaintiff's claim against Bruce Liller and Laura Wilson that he should have remained in the SNU was administratively exhausted even though it may not have needed to be, as it is a case management decision. *See Gabriel*, 2017 WL 371801, at *8. Plaintiff filed his ARP (NBCI ARP 1653-15) on August 6, 2015 alleging that he must be housed in the SNU because placement in the general population causes him to not take his medication and to become suicidal and that he was

14

removed without a proper medical evaluation. Admin R. 5–6. The Warden denied his appeal on September 14, 2015 explaining to Plaintiff that

> You [Plaintiff] were assessed for appropriateness on the SNU by your placement there for that reason. Keep in mind that when it was determined that you were not appropriate, you were recommended to General Population to which you did not like the recommendation. Furthermore, you also engage in 'self-diagnosis' that does not match the opinion of the trained mental health clinician's [sic] that have assessed you. Your administrative remedy allegations are without merit.

*Id.* at 5. Plaintiff appealed the Warden's decision to the Commissioner of Corrections on September 17, 2015. *Id.* at 2. The Commissioner denied his appeal on November 6, 2015, finding that his removal was "based on the needs of the unit and [Plaintiff's] conduct while living on the tier." *Id.* at 3. Plaintiff appealed the Commissioner's decision to the IGO (No. 20152224) on November 23, 2015, and it was dismissed on April 22, 2016 because the IGO found Plaintiff failed to state a claim for which relief could be granted. Neverdon Aff. ¶ 3(a). The IGO's decision was affirmed by the Circuit Court for Allegany County. *Id.* Therefore, regardless of whether Plaintiff was required to exhaust his administrative remedies or not, his claims for improper removal from the SNU are properly before the Court. *See Gabriel*, 2017 WL 371801, at *8; 42 U.S.C. § 1997e(a).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively viewed, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To meet the objective requirement, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at

844).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *See Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (holding that the focus should be on the precautions actually taken in light of the known risk, not those that could have been taken), *see also Jackson v. Lightsley*, 775 F.3d 170, 179 (4th Cir. 2014) (prescribing treatment raises fair inference that physician believed treatment was necessary and that failure to provide it would pose an excessive risk).  While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need."  *De'lonta v. Johnson*, 708 F.3d 520, 525–26 (4th Cir. 2013) (holding that an inmate pleaded a claim for deliberate indifference when the prison would not evaluate her for surgery that was an approved treatment for her serious medical need despite her repeated complaints regarding the ineffectiveness of her current treatment).  The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."  *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977).

The SNU is a small, segregated population of individuals who "have a qualifying diagnosis and who demonstrate behavioral stability to a level where they may function within the structure of the program."  Liller Decl. ¶ 4.  Plaintiff argues (although not in precise terms) that he should still be housed in the SNU and that he was removed improperly without an evaluation or any follow-up.  Am. Compl. ¶ 19. Although Plaintiff alleges he was "placed" in the SNU, NBCI

personnel did not admit him to the unit after assessment and a determination that he met the requirements to reside there, but rather permitted him to be housed there only for a "trial period" to evaluate his ability to participate successfully in the program. *Id.* ¶ 5. Bruce Liller, the Mental Health Program Manager who oversees the SNU at NBCI stated in his sworn declaration that

> Inmate Horton was assessed for placement into the SNU by the members of the SNU Treatment Team that included a trial period on the SNU as a nonparticipant. After review, the members of the Treatment team did not find Inmate Horton appropriate for the SNU and recommended him to general population.

Liller Decl. ¶¶ 5–6. Plaintiff placed into evidence his notice of assignment to the SNU; however, the language of the document itself indicates it was not permanent, but rather, provisional, and that his assignment to the SNU was "pending review of the circumstances." *See* Notice of Assignment, ECF No. 29-5. Ultimately, NBCI determined he should be placed in the general population. Liller Decl. ¶ 6. Plaintiff's dispute with NBCI does not allege or demonstrate an Eighth Amendment violation.[8] Further, Plaintiff is aware of the procedures by which he can request mental health assessment and treatment, and has been assessed repeatedly for mental health conditions and prescribed medication as indicated in the evidentiary record. *See* Admin. R. 31–47; Med. R. 2–28.

Despite Plaintiff's allegations about his treatment and medical needs, the record is replete with examples of where NBCI medical staff have found Plaintiff's claimed medical needs to be

---

[8] Plaintiff submitted an affidavit of another inmate, John Wagner, who stated "that the SNU program is allegedly designed for prisoners with the exact disorders as Mr. Horton was (sagaciously) allegedly removed for." Wagner Aff. 2, ECF No. 37-1. While a proper affidavit may be used as evidence to demonstrate there is a genuine dispute of material fact, the affiant must have personal knowledge of the facts set forth in the affidavit, or, if expressing an opinion, do so in a form that is admissible under Fed. R. Evid. 701 as a lay opinion, or Fed. R. Civ. P. 702, as an expert, in order to be in a form that is admissible at trial, as required by Fed. R. Civ. P. 56. John Wagner is an inmate at NBCI and his affidavit does not demonstrate that he has any medical knowledge or training that would render admissible any of his opinions about the proper clientele for a specialized unit like the SNU. Therefore, his testimony on this topic would not be admissible at trial and does not create a genuine dispute of material fact that would preclude imposing summary judgment. *See id.*; Fed R. Evid. 701, 702.

overstated or contradictory, *see* Admin. R. 41, or that Plaintiff refuses to take medications or submit to required lab draws, *id.* at 33 ("Per Psychiatry his Depakote was discontinued due to repeated lab draw refusals dating back to July 2015. Horton denies ever refusing, but documentation in EPHR shows RORs to the contrary. Horton has regularly claimed noncompliance with medications, stating that when he is in an erratic, bad mood he finds it difficult to take his medications when given to him."). Lauren Beitzel, a licensed clinical professional counselor at NBCI documented in a health services report when Plaintiff was claiming to be suicidal that

> Horton stated that he needed a break from the walls of his own cell. After a "vacation" in the holding cell he is "all better". This writer [Beitzel] offered resources and materials to him, but the only thing he wanted was to be on the SNU tier and be "catered" to.

Med. R. 2; *see also* Beitzel Decl. ¶ 7, ECF No. 27-4 ("Horton described strange symptoms that did not reflect the symptoms of valid hallucinations and when confronted he became belligerent. There was evidence of malingering these symptoms for secondary gain.").

Further, the medical records in evidence demonstrate that if he takes his medication, Plaintiff agrees that he does not suffer from hallucinations or mood swings and is calmer. *See e.g.,* Admin. R. 35 (". . . is taking Depakote, Clonidine and Haldol he denies acute problems He states that his mood has been stable with meds. No psychosis or depression noted."); 42 ("he states that his meds keep him calm and without mood swings he states he has not hasd [sic] hallucinations since being on Haldol He is not suicidal"). Thus, Defendants have supported their motion with documents of the type that is admissible in evidence, which show that, contrary to Plaintiff's allegations, NBCI is treating Plaintiff for his psychosis and other medical needs. Therefore, Plaintiff has not demonstrated that there is a genuine dispute of material fact that the medication or treatment being provided to him is insufficient, let alone constitutionally

inadequate. The evidence produced by the Defendants demonstrates that Plaintiff has admitted that he has been prescribed medication for this mental health conditions, but at times refuses to take it, as well as that when he does take his medication, his symptoms dissipate. His refusal to take his medication is not a failure of Defendants to provide it. Therefore, there is no genuine dispute of material fact that NBCI is not deliberately indifferent to his medical needs. Instead, this is merely a disagreement over treatment and Plaintiff's desire to be housed in a different unit.

The Eighth Amendment does not guarantee that prisoners will receive the health care of their choice or the medications they prefer, but only that serious medical conditions will not be treated with deliberate indifference. Plaintiff merely demonstrates he has a disagreement with the assessment of the medical personnel overseeing his treatment. *Williams v. Corizon Med. Serv*., DKC-12-2121, 2013 WL 4541684, at * 7 (D. Md. Aug. 26, 2013) ("Disagreement with a medical provider does not amount to a violation of constitutional magnitude. An inmate's difference of opinion over matters of expert medical judgment or a course of medical treatment does not rise to the level of a constitutional violation."); *Williams v. Bishop*, RWT-12-1616, 2014 WL 4662427, at *6 ("A prisoner's strong desire to be in a single cell, based on his belief that his medical conditions cause difficulties with cellmates, does not entitle him to housing in a single cell unless medical providers have made a directive for a single cell based on a medical need. In this case, there has been no such directive, and thus the Plaintiff's claim amounts to a mere difference of opinion over the preferred course of medical treatment.") (citing *DeFranco v. Wolfe,* 2008 WL 596735, at *12 (W.D. Pa. Mar. 4, 2008)). NBCI has demonstrated that it did not determine that Plaintiff should be admitted to the SNU but merely was evaluating whether admission would be appropriate. Having concluded that he was not a proper candidate for the SNU, Med. R. 2 (stating he was looking to be "catered to" in the SNU); Beitzel Decl. ¶ 7 (reporting that Plaintiff

was complaining of symptoms for secondary gain), NBCI personnel recommended he be placed in the general population. Liller Decl. ¶¶ 5–6. Moreover, Plaintiff is not entitled to a single cell in the SNU merely because he thinks he would benefit from being housed there instead of in the general population. *See Williams*, 2014 WL 4662427, at *6.

Therefore, Plaintiff's claim against Laura Wilson and Bruce Liller regarding his removal from the SNU will be dismissed. *See Grayson*, 195 F.3d at 695; *Williams*, 2013 WL 4541684, at * 7 (citing *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010)).

*State Law Claims*

Plaintiff's claims against Ms. Beitzel, Ms. Simmons, and Ms. Halwager for negligence and Mr. Siracusano for medical malpractice all arise under state law. Am. Compl. ¶¶ 68–69. When a district court "dismisse[s] all claims over which [it] enjoys original jurisdiction," as I have done by dismissing Plaintiff's § 1983 claims, it "may decline to exercise supplemental jurisdiction" over remaining state-law claims. 28 U.S.C. § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Having dismissed all of Plaintiff's § 1983 claims for which this Court has original jurisdiction, I will decline to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3).

### Conclusion

Defendants' motion will be granted. Plaintiff's claims pursuant to § 1983 for his removal from the SNU unit and against Mental Health Professional Counselor–Advanced Bruce Liller and Laura Wilson will be dismissed with prejudice. Plaintiff's Complaint is dismissed with prejudice

as to Warden Frank B. Bishop, the Honorable Nancy Kopp and "Psychology department and officer of the North Branch correctional Institution."

Plaintiff's claims for the alleged assault on June 25, 2016 and for inadequate medical care against Acting Lieutenant Janet Puffenbarger, Correctional Officer II Timothy Marchinke, and Correctional Officer II Cody Gilpin, Bruce Liller, and Laura Wilson will be dismissed without prejudice for Plaintiff's failure to exhaust. As I have declined to exercise supplemental jurisdiction for the state law claims against Correctional Officers Cody Gilpin and Timothy Marchinke and Mental Health Defendants Psychology Associate I Lauren Beitzel, Norma Halwager, Jennette Simmons, and Vincent Siracusano, those claims will be dismissed without prejudice. A separate Order follows.

<u>March 9, 2018</u>                     <u>            /S/                        </u>
Date                                                        Paul W. Grimm
                                                                United States District Judge